The next case call for oral argument is Mueth v. Mueth, counsel. Whenever you're ready, you may proceed. I believe the person counsel is still in the design. Oh, okay. I thought the two, okay. We'd like to have a one-sided argument, but we think that probably was Mueth. Oh, probably so. We got the drop on everyone this morning. We did. Okay. Thank you. Thank you. Thank you. Next case is Mueth v. Mueth, counsel. Whenever you're ready, you may proceed. May it please the court, the closing counsel. First, with respect to the issue of the $9,900 in attorney fees that were awarded by Judge Rice in this case, I think the key here is a document that I attached to my memorandum of law in support of my motion to reconsider. It's document number C-689. This document lays out the incomes of the parties with respect to the award of $9,900 in attorney fees. This document is taken from the evidence that was provided by the parties to the court. Each one of the dollar amounts of the incomes of the respective parties is taken from their financial statements that the parties filed with the court. And then from there, what I have done is deducted from the father and added into the mother the child support and the maintenance that was ordered to be paid, which were, in fact, paid by him and received by her in the course of this. These documents show that the income of the parties at the time of the hearing in 2007, at the time of the order which granted the $9,900 in attorney fees, showed that there was only a $10 difference between his net income and her net income at that point in time. The respective expenses of the parties are listed in the financial statements that I cited in the statement of facts. Based on this $10 disparity, it's our argument that the court should not have awarded attorney fees in the amount of $9,900 in this case. The case law that I provided in my brief lists what the court should consider with respect to the income, assets, expenses, and debts of the parties. And along those lines, the income is so close between the two parties. And when you add into that the fact that the father had numerous expenses that the mother did not, when you add that in, it's clear that each party should be paying their own attorney fees and costs in this matter. The wife did not demonstrate an inability to pay her own attorney fees and costs. Which case indicates you should consider child support in determining allocation of attorney fees? There were two cases that I cited. The first was Bean and the second was Krivy. And both of those cases specifically referred to adding in the child support in calculating the income. In the Krivy case in particular, it specifically states you do not look at the same factors that you use for purposes of calculating child support as determining net income as you would for purposes of attorney fees. It's a different standard. And based on those two cases, the income of the child support that was ordered to be paid from the husband to the wife should be considered in her income. And Judge Rice refused to do that. He said that he could understand deducting it from the father's income, but he could not understand adding it to the wife's income. And that was even after I pointed out the Bean case to him at that point in time. So our argument is that with respect to the calculation of what the net incomes are for purposes of the award of $9,900 in attorney fees, that it should include the wife's receipt of the child support for that purpose. Next, with respect to the issue of venue, a couple of things about venue. The first is that this is not an ordinary assignment in the ordinary course of judicial reassignment. This is an action that was specifically initiated by the wife after pleadings had been filed, after her time to answer had come and passed, in which she requested that this case be transferred from the venue of St. Clair County over to Clinton County. Now, the basis for the transfer of venue... Was anyone left in St. Clair County? No. In fact, I was just about to say the basis for the argument for the transfer of venue had actually occurred three years earlier. The husband moved in 2006. The wife was granted leave to remove on a motion to reconsider and had moved to Missouri in 2005. The argument and motion for transfer of venue didn't occur until 2009, three years after the husband had moved, and neither party had been living in the county for a long period of time. It's in the court's discretion, of course, under 511 and 512, whether to grant a transfer of venue under those circumstances. All of the case had been heard, petition after petition, had been heard in St. Clair County up until that point in time. This case started in 2000 with the filing of a petition for dissolution, and here it was 2009, nine years later, and the entire matter had been heard in St. Clair County up until that point in time. The wife should have filed her motion to transfer venue much earlier than when she did, and she had ample opportunity to do so. The petition that had restarted the case, if you will, had been filed by the husband in July of 2009, in which he filed a petition to modify custody. At that point in time, there still had been a motion to reconsider pending that had been filed by the wife with respect to an order that had been granted in April of 2009, several months earlier. So that was still pending when the husband filed his petition. It's now September of 2009, several months later, and the wife first makes an oral motion for transfer of venue in this matter. And that is the point that I'm trying to make, is that this wasn't a situation where one judge left the bench, another came in to take his place on the normal rotation. This is a specific request to move the case from one county to another that the wife had made. And I submit that along the lines of the denial of the motion to reconsider, which occurred in the interim in August of 2009, between the time of the filing of the motion for modification of custody in July and until the request was made in September, in that two-month period in the interim, the wife had an adverse ruling as a result of a decision by Judge Baffet to deny her motion to reconsider with regard to the visitation and the transportation that had been ordered from April. So she had had an adverse ruling in the interim. And I submit that that's a substantive ruling that prevents her from requesting a change in venue at that late point in time. This is a change of venue to another county, not from a judge, isn't it? Correct. It is a transfer of venue that she requested under Sections 511 and 512. And it is based on that statute. Well, that's not barred by a substantive ruling, is it? Well, the argument that I'm making is that it's judge shopping at that point in time. Okay. Is that she is trying to get away from the one judge who had ruled against her in this matter in August of 2009 and had ruled against her at the previous order in April of 2009. And she had ample opportunity from 2006 up until September of 2009 to make this request up until that point in time. With respect to the issue of the psychological examination, the points that I want to make with regard to that are with respect to the findings by Judge Bapta in his 2008 order, the fact that the mother was extremely untruthful, the fact that she had turned on and off her Chinese language abilities to suit her own needs, the things that he had found, as well as the guardian, Ed Lydum, in his report to the court. He had made numerous findings. Based on that and based on the allegations that were in the new petition that was pending, the petition to modify custody that had been filed in July of 2009, the court should have ordered a psychological examination for the mother or evaluation of the parties. And I had filed a motion with regard to that on behalf of the father, requesting that that be granted in fall of 2009. The court, when it heard the evidence, when it came into court in December of 2009 in front of Judge McHaney in Flint County, the court at that point in time heard numerous pieces of evidence with regard to the mother's continued untruthfulness, with regard to the mother's manipulating of the children and involving them in the issues between the mother and the father, and also with respect to putting the child's life, I submit, in hazard at one point in time with regard to the incident where the child was standing on the running board and she started driving away. But those, and I submit that those things, as well as the previous findings by Judge Babkin, the guardian, Ed Lydum, in the matter, justified an order for a psychological examination. It's a discretionary decision of the trial court, isn't it? It is, yes. Did the guardian, Ed Lydum, support that request? The guardian, Ed Lydum, was not involved. The guardian, Ed Lydum, had been appointed in St. Clair County, and we didn't have a new guardian, Ed Lydum, in Flint County, so there was no GAO input with respect to the psychological evaluation, because that had been filed after the first order had been entered in St. Clair County. Next, with respect to what constitutes the last custody judgment. The statute I laid out with respect to 610 and modifications of the custody judgment, and argument was heard on this issue in front of Judge Babkin, and he ruled in favor of the father in this case, in which he found that the last custody judgment was a joint parenting order from 2004, not the order that had been entered by Judge Rice in 2005 with respect to, I'm sorry, 2007, with respect to granting leave to remove and setting it for review. But with respect to that particular statute and what it provides, the statutory language specifically refers to a modification of custody. Let me ask you something about that. Despite the ruling on that particular point, there was evidence presented and the court did hear evidence on this. What new evidence, let's take your date, what new evidence was there as far as it would touch on warranting a change of custody? The new evidence between the time Judge Babkin entered his order in 2008 and the time we filed our petition in 2009? Right. Oh, okay. Yeah, I'm taking for the sake of argument your date. With respect to Judge Babkin? The 2008 date. Okay, with respect to Judge Babkin, since Judge Babkin's ruling. Because he did, in his order, he said the last custody judgment was 2004, but you're limited to only things that you can show after August of 2008 when I enter my order. Right. So what new evidence is there? The new evidence was, and if you go back to the time of Judge Babkin's order, he specifically made a finding that children are well-adjusted and perform well in school. Well, one of the significant pieces of new evidence was that Clarissa's grades had dropped significantly. Another was that they had missed school and missed assignments. Another was the running board incident, which I mentioned. Another was where there had been this pushing match between the mother and the daughter, the older daughter, in the medical office. Another was the false allegations with regard to sexual problems by the stepson of the father. And then lastly was getting the Gardasil shots and claiming that she didn't understand them, that she didn't know that they were Gardasil shots, she thought they were routine shots, and then finally admitting that she did know they were some kind of shots. All of that evidence that I put in my statement of facts. Those were the primary pieces of evidence that we included in our- All of which occurred after that date in 2008. Correct. Yes. Getting back to the statute, though, there's two pieces to the statute. Sections A and D. And both of those sections pertain, and I'm talking about the statute with regard to a modification of custody. The first section deals with a prior custody judgment. And the second section of that statute, and I went through this in a little bit of detail in my argument, talks about prior custody judgment, but then refers later on to prior judgments with respect to what the time frame is for purposes of demonstrating a modification of custody. And I submit that that distinction leaves you with the situation where if the purpose of the statute, of course, is to promote stability with respect to the child, if a petition to modify custody is denied, then that stability is still promoted even if you allow a petition to modify- a subsequent petition to modify custody within the two-year period. And it's promoted in two ways. First of all, the children haven't moved. They're in the same situation they were before the first petition to modify custody is denied. Secondly, you have a section in 602 of the IMDMA, which talks about best interests, which promotes stability. And that section of 602 allows for, as one of the factors, one of the best interest factors to be considered, adjustment to homes, school, and community, which is an element of stability. So you aren't losing anything by interpreting the statute to mean that you can modify a petition to modify custody. You can file a petition to modify custody within two years of a prior petition to modify custody that has been denied. The Miller case lays out the language that specifically states that custody, the two-year moratorium, if you will, on modification of custody is when the last judgment vesting custody in the party opposing modification. Well, in this particular case, the last judgment vesting custody in the party opposing modification would have been the joint parenting order from 2004. And this is the argument that I presented to Judge Babka, and this is the argument upon which he relied. There was no new information or evidence between the time that Judge Babka's order in 2008 – I'm sorry, 2009 – and the time in – I'll be specific – in September of 2009 and the time of Judge McHaney's order changing that, reversing that in January of 2010. Nothing else was presented in that regard. He simply made a finding that he found this to be erroneous by Judge Babka as a matter of law and reversed it. Thank you, counsel. Counsel? Thank you, and may it please the Court. My name is Sarah Warren. I represent Ms. Iris Muth, the respondent in this matter. The Petitioner, Jeffrey Muth, has raised seven issues on appeal with this Court. The first, two issues having to do with attorney's fees, one, a change of venue, and then two issues having to do with what determines the last custody judgment, and then finally, whether or not the Court should have ordered a psychological evaluation and whether the Judge McHaney's ruling denying our Petitioner's last motion to modify was an error.  The trial court on September 14, 2007, entered an order awarding respondent $9,900 in attorney's fees, and pursuant to the Illinois Marriage and Dissolution of Marriage Act, section 508A, the statute states that the Court may order any party to pay a reasonable amount for his or the other party's attorney's fees and costs. Here, opposing counsel has pointed to this September 14, 2007 order. What needs to be noted is that order actually resolved the outstanding issues that remained from the original judgment of dissolution that was entered in December of 2003. And if you look to the judgment of dissolution, the Court actually made a finding as to the party's income in that judgment. It stated at paragraph 9 of the judgment of dissolution that the Petitioner's net income was $4,666 per month, whereas the respondent's income was $940 per month. Now, opposing side also points to the fact that child support should be taken into consideration when looking at the respondent's net income. However, child support is specifically for the purpose of providing for the children. It's not to be looked at as terms of expenses for the actual party. He also points to… How would you distinguish the Bean case that he relies on? Well, looking at Bean and Prevey, both 5th District cases, the incomes for those parties are significantly closer than what the Court found to be in its judgment of 2003. Oh, go ahead. No, you're on the same point. Okay. I think we do. That doesn't count adding in the child support. Correct. Right. In Bean, the Court did actually add in the child support. However, our argument is that child support should not be considered for the purposes of determining attorney's fees because those monies are actually for the purpose of supporting the children. Child's going to be supported no matter what. How realistic is your position when you look at resources and when you look at attorney's fees, you look at resources of the parties to pay? You've got a child who needs to be supported and will be supported. And you don't have any question by any of the trial judges who looked at this case that that would happen. You looked at resources of both parties as the capacity to pay. How realistic is your position when you say, well, we're going to have the shift of income for the purpose of child support. Then we're going to look at the parties' resources on a comparative basis to determine ability, inability, or relative ability to pay attorney's fees. But we're not going to look at the resources that were just shifted. I understand your point, and I respect that, Your Honor. However, I would also point to the fact that not only looking at the resources of the parties, in this case you should also look at the time that we're talking about as well. We're looking at a seven-year period from the time that the petitioner actually filed his petition until the point in time where Judge Rice actually ruled and entered the order in September of 2007. I'd also point to the fact that the Illinois Supreme Court in Busey pointed out that an awarding of attorney's fees in the proportion to be paid are within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. Judge Rice actually had the benefit of looking at the case from the beginning to his order in September of 2007. There's no question that it's discretionary. And all three of us have been trial judges and have had to make those discretionary calls. The point I think that Justice Donovan and I were getting to is you have to have an accurate and appropriate factual basis upon which the judge exercises his or her discretion. How appropriate is it to exclude an ongoing and identifiable source of funds in determining the relative position of the parties as to funds in order to determine whether there should be an award of attorney's fees. Well, I can't attest to Judge Rice's determinations as far as what he looked at. All I can point to is the fact that in the judgment... Well, we assume he looked at everything in the record. I mean, that's the ongoing assumption. And so you can go on that basis. Well, and based on the facts that he looked at and the fact that he did point out actually in the judgment that there was this disparity in incomes and that the petitioner had access to more resources than the respondent as she was a waitress at the time of the divorce, I think that is what the judge relied on in making that determination and further explained that the child support should actually be used for the purposes of the children and supporting the children, not paying for attorney's fees in this matter. The second issue on appeal raised by petitioner is that of the change of venue. The oral motion was made by the respondent on September 22nd of 2009. Again, pointing to the fact that this has been an ongoing case for approximately over a decade at this point in time, there have consistently been pleadings on review or in the trial court up until the September 22nd oral motion was made. The oral motion was made after the petitioner had filed an amended petition to modify custody. At that point, that was the appropriate time for the respondent to actually make the motion for change of venue. And she did make this pursuant to Section 511A and 512C of the Illinois Marriage and Dissolution of Marriage Act. As the oral motion was timely and it was within the court's discretion to go ahead and do the change of venue because neither party lived in St. Clair County at the time, it was the correct decision and should be upheld. The petitioner also argues that the court should look at the fact that he filed a petition to modify in July of 2007. However, based on the allegations in that petition, or July of 2009, based on those allegations in the petition, the court had dismissed it, told him he had the opportunity to refile because the allegations had been substantially similar to the allegations in the January of 2007 petition that had just been decided in August of 08. Further, it wasn't an issue of judge shopping. Not only had the case been reassigned during judicial rotation, but the adverse ruling that opposing side points to merely had to do with visitation and transportation. She'd actually been ruled in favor of with respect to the petition to modify custody. So she wasn't trying to escape Judge Bath's ruling as he'd actually ruled in her favor previously with the August of 2008 order. The third issue that was raised on appeal has to do with the denying of the motion for psychological evaluation. As Your Honor pointed out, it is a discretionary call with respect to whether or not a trial court judge is going to order a psychological evaluation. Not only is it discretionary pursuant to Section 604B, as language says, the court may order a psychological evaluation, but similarly in Supreme Court Rule 215, the language is very similar in that it says the court may award a psychological evaluation. The previous guardian item to which opposing side alludes to was actually appointed for the matter and the petition to modify that was filed in January of 2007. That decision had been made in August of 2008. So at this point, the motion for psychological evaluation is coming in front of the court on the new petition to modify custody and visitation, which was filed in September of 2009. So the GAL was not involved in the second case such that there was no opinion to be rendered by the GAL. Further, there's another section, Section 604.5A, which also is another avenue from which the trial court can appoint a psychological evaluation. And again, it says may as well. So based on the three different sections of two different statutes and then the Supreme Court rules, the court has the discretion to appoint for psychological evaluation. The fourth issue that was raised on appeal is whether or not the Clinton County Trial Court erred in reversing St. Clair County Trial Court's ruling regarding the last custody judgment. Opposing side argues that the joint pairing agreement entered in April of 2004 is actually the last custody judgment. Well, pursuant to 610A of the Illinois Marriage and Dissolution of Marriage Act, if a motion to modify custody is brought within two years from the entry of a custody judgment, it has to be brought by agreement of the parties or it has to be supported by the basis of affidavits that there is a reason to believe that the child's present environment may endanger seriously his physical, mental, moral, or emotional health. Let me ask you the same question. I asked your opposing counsel what new evidence is there from the date, the 2008 date. Well, he was correct in saying that some of the new evidence that they had provided had to do with Clarissa's grades, missed school, and then some issues between parenting between the mother and daughter. I would point to the fact that the court did have a hearing on these issues and issued a ruling in January of 2010 dismissing that petition to modify custody and visitation again. I'll also point to the fact that Clarissa at this point in time is 13 years of age. At the time that the 2007 petition to modify was filed, she was only 11. So we have a different going into a new school, coming of age things as well. So the relationship and dynamic between the mother and daughter is going to change. However, I would again point to the fact that Judge McHaney did have a hearing on these issues and again decided or ruled that the petition to modify custody and visitation should be dismissed. And the reason that we're looking at what constitutes the last custody judgment is that opposing side has brought four different petitions to modify custody over the course of these proceedings. By doing this, he's continually having the parties in court. It is upsetting the relationship and dynamic at home of my client and her children and for opposing side in his visitation. While stability is there with respect to the home environment and going to the same schools, you still have this constant upheaval of being in the judicial system. So while opposing side would point that stability has remained, and in fact, it hasn't. There's this constant plow, so to speak, over the parties' relationships. And I'd also like to point to the fact that in Petitioner's brief, he relies on Henri the Marriage of Miller, which is the first district appellate court case. And in fact, he cites the language that the custody judgment, which is entitled to the statute's two-year protection for modification, is a judgment which finally establishes custody with the parent opposing modification. That court also specifically stated that to make sure it was clear what the last custody judgment was, that their ruling regarding that modification was actually constituting the last custody judgment and that it reestablished custody with the parent who was opposing modification. Based on that information, or based on that ruling from the court, Judge McHaney was correct in saying that the August 2008 order had constituted the last custody judgment. However, again, this court finds that the April 2004 joint parenting agreement was the last custody judgment. In fact, Judge McHaney did, again, look at the facts, the new facts raised, and made a ruling on that decision. The fifth issue, which goes to Judge McHaney's ruling on the motion to modify custody that was filed in September of 2009, is whether or not he erred in dismissing that amended petition to modify custody. Pursuant to the Henri the Marriage of Stueckert and Bowen, the 2nd District Appellate Court held that a reviewing court will not overturn the trial court as it pertains to custody modification unless there is a determination that said denial of modification is against the manifest weight of the evidence. And further, the opposing side also has the burden of proof, which is clear in convincing evidence that a change in circumstances has occurred in the situation. After reviewing the new evidence brought forth by opposing side, Judge McHaney did rule that the custody modification should be denied, and again re-established custody with the respondent, which points to the seventh issue that was raised by opposing side, in that the last custody judgment as ruled by Judge McHaney would have been the January 2010 order that was entered in Clinton County, January 26th of 2010. And again, the reason this would be the last custody judgment, setting a statutory two-year waiting period for modification, is that it again established custody with the respondent. The only other issue that was raised on appeal by a petitioner was the issue of whether or not the trial court erred in awarding respondent attorney's fees for his vexatious and harassing filing of his amended petition to modify custody. Pursuant to Section 610C of the Illinois Marriage and Dissolution of Marriage Act, the court shall assess attorney's fees and costs against the party seeking a modification of custody if it finds that the modification action is vexatious and constitutes harassment. And in Ree, the Marriage of Pond and Pomeroy B, the second district appellate court held that when a trial court awards attorney's fees, that determination, again, will not be disturbed absent abuse of discretion. This case specifically dealt with issues of fees and the awarding of fees on the basis of vexatious and harassing filings. And in that case, the fees were upheld in that multiple filings have been filed by the side wanting the modification such that the parties were constantly in court. It should be noted that in this case, again, the petitioner has filed four separate pleadings trying to modify custody since the July 2004 joint parenting agreement was entered. Thank you, Your Honor. Thank you, Counsel. Counsel? With regard to the issue of venue, Section 2-101.5C of the Civil Practice Act states the standard for change of venue, and that is the change of venue shall not be granted unless it is presented before trial or hearing begins and before the judge to whom it is presented is ruled on any substantial issues in the case. In this particular case, the issue with respect to venue is you have to look at what had been unfiled, what was pending at that point in time. The answer was overdue. They had filed, the mother had filed a motion to strike and an amended motion to strike after the petition to modify custody was filed in early July. The mother had filed both of those motions in late July, but never filed anything with respect to transfer venue until September, over three months after the initial petition had been filed. Her answer was overdue with regard to that. And I've already spoken about the issue with respect to whether there had been a substantial ruling in the case. With respect to the issue of the motion for psychological examination, the problem here is we're looking at the same types of issues, the same character traits, that had permeated the wife's, the mother's testimony and her actions in the 2008 petition that now show up again in the 2009 petition that was heard in December of 2009. And that's why I think it's critical that a motion for psychological evaluation be granted in a situation like this. You have a situation where the same negative character traits crop up. I cited a case in my brief that says you don't have to wait until these problems manifest themselves in the children before you use that as a basis for modification of custody. Based on that principle, it's critical that we have a psychological evaluation of her actions to be able to determine whether this is going to be a problem that maybe the children are dealing with now but won't show up until later. And I think the case law supports that. Granted, everyone knows it's in the discretion of the trial court, but by the same token it's important that that discretion be used wisely, and I don't think it was in this matter. With respect to the issue of the petition to modify custody, I'm sorry, with respect to the action regarding it being harassment and vexatious, as Ms. Ward mentioned, there were actually only two hearings on the petition to modify custody. And the first one was actually a review hearing by Judge Rice when he entered his order in 2005, granting the wife, and this is a little bit funny how it's worded, granting the wife leave to remove to Missouri and allowing it for review in one year. Well, that review didn't happen until 2008. It's three years, actually. You have to look at whether or not that is a permanent grant of leave to remove, subject to review, whatever that means, or whether it's a temporary grant of leave to remove subject to a permanent hearing on that. And I will say that the order is not quite clear that was entered by Judge Rice in 2005 with respect to that. So the first hearing in 2008 in front of Judge Babcock is actually a follow-on to that initial review. The second hearing in December of 2009 in front of Judge McKaney in Clinton County is the second petition, if you will, to modify custody. And the first time it had been stood on its own, so to speak. So I don't think it's harassment or vexation under the circumstances that the husband filed the two separate petitions in this matter. And to enter an order for attorney fees based on that, I think, is an abuse of discretion on the part of Judge McKaney in this matter, all things considered. With regard to the petition to modify custody, I've laid out all of the factors with respect to that issue. Oh, let me get back to the issue of custody itself and whether 6-10, the two-year period, and when that starts. The Miller case that was alluded to just a moment ago by Ms. Ward specifically states in that case that the court held, and I'm reading from the last page of the opinion, actually the very last paragraph, we hold that with this judgment, which again grants custody to Gail, which was the mother in that case, in the Miller case. If you look at the two orders that were entered, the first one by Judge Babcock in 2008 and the second one by Judge McKaney in January of 2010, neither one of them specifically re-granted custody to the mother. Both of them just flat out denied modification of custody by the father. There was no revestment of custody. It's consistent with the prior language in Miller, which states that you look to when revestment or when the determination was made which finally establishes custody with the parent opposing modification. That's it. Thank you. Thank you, Counsel.